Nos. 26-1354, 26-1371, 26-1440, 26-1441 (cons.)

IN THE
UNITED STATES COURT OF APPEALS
FOR THE SEVENTH CIRCUIT

| | | |
|---|---|---|
| ILLINOIS BANKERS ASSOCIATION, AMERICAN BANKERS ASSOCIATION, AMERICA'S CREDIT UNIONS, and ILLINOIS CREDIT UNION LEAGUE, | ) ) ) ) ) | Appeal from the United States District Court for the Northern District of Illinois, Eastern Division |
| Plaintiffs-Appellants/ Cross-Appellees, | ) ) ) | No. 1:24-cv-07307 |
| v. | ) ) | |
| KWAME RAOUL, in his official capacity as Illinois Attorney General, | ) ) ) | The Honorable |
| Defendant-Appellee/ Cross-Appellant. | ) ) | VIRGINIA M. KENDALL, Chief Judge Presiding. |

**CROSS-REPLY BRIEF OF DEFENDANT-APPELLEE/CROSS-APPELLANT**

**KWAME RAOUL**
Attorney General
State of Illinois

**JANE ELINOR NOTZ**
Solicitor General
115 South LaSalle Street
Chicago, Illinois 60603
(312) 814-3000

**CARSON R. GRIFFIS**
Assistant Attorney General
115 South LaSalle Street
Chicago, Illinois 60603
(312) 814-2447 (office)
(773) 505-5282 (cell)
Carson.Griffis@ilag.gov

Attorneys for Defendant-
Appellee/Cross-Appellant

# TABLE OF CONTENTS

*Page*

TABLE OF AUTHORITIES ....................................................................................... ii

SUMMARY OF ARGUMENT ..................................................................................... 1

ARGUMENT ................................................................................................................ 3

Plaintiffs lack standing to bring a pre-enforcement challenge to the Data
Usage Limitation. ....................................................................................................... 3

    A.      Plaintiffs' reading of the Data Usage Limitation would create
           absurd results and render the word "facilitate" superfluous ................... 4

    B.      Plaintiffs' proposed interpretation would create unnecessary
           conflicts with the Banking Act and defy Illinois canons of
           statutory interpretation ............................................................................. 8

    C.      Plaintiffs' anti-money laundering programs and internal
           analyses of transaction data are not arguably proscribed by the
           Data Usage Limitation ............................................................................ 10

    D.      Plaintiffs' speculation about the Attorney General's future
           litigation positions and the Illinois Supreme Court's
           interpretation of the Data Usage Limitation do not confer
           standing ..................................................................................................... 12

CONCLUSION .......................................................................................................... 13

CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATION,
TYPEFACE REQUIREMENTS, AND TYPE STYLE REQUIREMENTS

CERTIFICATE OF FILING AND SERVICE

i

**TABLE OF AUTHORITIES**

*Page(s)*

**Cases**

*Andrews v. Kowa Printing Corp.*,
217 Ill. 2d 101 (2005) ...........................................................................7, 8

*Babbitt v. Farm Workers*,
442 U.S. 289 (1979) ....................................................................................3

*Clapper v. Amnesty Int'l USA*,
568 U.S. 398 (2013) ..................................................................................12

*Corbett v. Cnty. of Lake*,
2017 IL 121536 .........................................................................................12

*Dynak v. Bd. of Educ. of Wood Dale Sch. Dist. No. 7*,
2020 IL 125062 .........................................................................................11

*Ferguson v. McKenzie*,
202 Ill. 2d 304 (2001) .................................................................................8

*Gross v. Town of Cicero, Ill.*,
619 F.3d 697 (7th Cir. 2010).....................................................................7-8

*In re Ill. Bell Switching Station Litig.*,
161 Ill. 2d 233 (1994) .................................................................................4

*Kloeppel v. Champaign Cnty. Bd.*,
2022 IL 127997 .........................................................................................10

*Manago v. Cnty. of Cook*,
2017 IL 121078 ...........................................................................................6

*McIntosh v. Walgreens Boots All., Inc.*,
2019 IL 123626 ...........................................................................................5

*People v. Johnson*,
2017 IL 120310 ...........................................................................................7

*People v. Nance*,
2024 IL App (3d) 230365.............................................................................4

*People v. Reed,*
 2025 IL 130595 ................................................................................. 6

*People ex rel. Atwell Printing & Binding Co. v. Bd. of Comm'rs,*
 345 Ill. 172 (1931) ........................................................................... 9

*People ex rel. Ill. Dep't of Corrs. v. Hawkins,*
 2011 IL 110792 ................................................................................ 7

*People ex rel. Madigan v. Burge,*
 2014 IL 115635 ................................................................................ 9

*People ex rel. Oak Supply & Furniture Co. v. Dep't of Revenue,*
 62 Ill. 2d 210 (1976) ........................................................................ 5

*Schirmer v. Nagode,*
 621 F.3d 581 (7th Cir. 2010) .......................................................... 4

*State ex rel. Raoul v. Elite Staffing, Inc.,*
 2024 IL 128763 ............................................................................ 5, 7

*Susan B. Anthony List v. Driehaus,*
 573 U.S. 149 (2014) ......................................................................... 3

*Sweeney v. Raoul,*
 990 F.3d 555 (7th Cir. 2021) .......................................................... 3

**Statutes**

205 ILCS 5/1 ...................................................................................... 1

205 ILCS 5/48.1(b)(17)(A) .............................................................. 8, 9

205 ILCS 5/48.1(b)(18) ................................................................... 8, 9

815 ILCS 151/150-15(b) .......................................................... *passim*

815 ILCS 505/1 .................................................................................. 5

820 ILCS 115/1 .................................................................................. 7

**Other Authorities**

31 C.F.R. § 1020.210(a) .................................................................. 10

31 C.F.R. § 1020.210(b) ...................................................................... 10

31 C.F.R. § 1020.220 .......................................................................... 10

31 C.F.R. § 1020.320(a)(1) ................................................................. 10

*Disseminate*,
   Merriam-Webster Online Dictionary, https://bit.ly/4tnGSNN ......................... 11

*Distribute*,
   Black's Law Dictionary (12th ed. 2024) .......................................... 11

*Exchange*,
   Merriam-Webster Online Dictionary, https://bit.ly/4tXmt27 ....................... 11

*Transfer*,
   Black's Law Dictionary (12th ed. 2024) .......................................... 11

## SUMMARY OF ARGUMENT

As explained in the combined response and principal brief of Defendant-Appellee/Cross-Appellant Kwame Raoul, in his official capacity as Attorney General for the State of Illinois ("Attorney General"), the district court erred in concluding that Plaintiffs-Appellants/Cross-Appellees Illinois Bankers Association, American Bankers Association, America's Credit Unions, and Illinois Credit Union League had standing to bring a pre-enforcement challenge to section 150-15(b) of the Interchange Fee Prohibition Act ("Data Usage Limitation"), 815 ILCS 151/150-15(b).  The Data Usage Limitation generally provides that entities involved in the electronic payment process "may not distribute, exchange, transfer, disseminate, or use the electronic payment transaction data" unless doing so would "facilitate or promote the electronic payment transaction."  *Id*.  But plaintiffs' intended activity — using transaction data to administer customer rewards programs and detect fraud — would facilitate electronic payment transactions, so they fail to establish that the statute arguably applies to them.

In their response brief, plaintiffs resist this commonsense reading of the Data Usage Limitation, asserting that the Illinois General Assembly intended to penalize virtually all uses of electronic payment transaction data, no matter how beneficial to consumers or the public.  In doing so, plaintiffs ask this court to ignore the Data Usage Limitation's purpose, the consequences of adopting this broad reading of the Data Usage Limitation, and the unnecessary conflicts plaintiffs' reading would create with the Illinois Banking Act ("Banking Act"), 205 ILCS 5/1 *et seq.*

Instead, plaintiffs say, this sweeping intent must be inferred because the legislature used one word — "the" — in the Data Usage Limitation.  Such an overly literal interpretation of statutory language is inconsistent with Illinois law, however.  This court should thus reject plaintiffs' absurd construction of the Data Usage Limitation, hold that they lack standing to bring this pre-enforcement challenge, and reverse the district court's permanent injunction of the Data Usage Limitation.

**ARGUMENT**

**Plaintiffs lack standing to bring a pre-enforcement challenge to the Data Usage Limitation.**

To establish their standing to bring a pre-enforcement challenge to the Data Usage Limitation, plaintiffs must demonstrate "'an intention to engage in a course of conduct arguably affected with a constitutional interest, but *proscribed by a statute*, and . . . a credible threat of prosecution thereunder.'" *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 159 (2014) (quoting *Babbitt v. Farm Workers*, 442 U.S. 289, 298 (1979)) (emphasis added).[1] This required plaintiffs to present evidence that they intended to "distribute, exchange, transfer, disseminate, or use the electronic payment transaction data" in ways that did not "facilitate or process the electronic payment transaction" or that were not "required by law." 815 ILCS 151/150-15(b).

But the conduct that plaintiffs asserted would be proscribed by the Data Usage Limitation — using electronic payment transaction data to detect fraud and administer customer rewards programs, *see* Doc. 124 at 11; Doc. 125 at 28, 48 — facilitates electronic payment transactions by ensuring they are legitimate and by incentivizing use of electronic payment methods, leading to wider adoption and use of those methods. Thus, plaintiffs have not shown that their members intend to engage in conduct proscribed by the statute. *See, e.g.*, *Sweeney v. Raoul*, 990 F.3d 555, 560 (7th Cir. 2021) (union lacked standing to bring pre-enforcement First Amendment

---

[1] This reply brief cites the Attorney General's combined principal and response brief as "AG Br. ___," and plaintiffs' combined response and reply brief as "IBA Br. ___." This brief cites the district court's docket as "Doc. ___."

challenge to statute's fair-representation obligation when it "pledge[d] to fulfill its duty of fair representation"); *Schirmer v. Nagode*, 621 F.3d 581, 587 (7th Cir. 2010) (plaintiffs lacked standing to bring pre-enforcement challenge to statute that could not "fairly be read to prohibit peaceful protests of the sort engaged in by the plaintiffs," even though they were previously arrested for violating it).  And as explained below, none of plaintiffs' strained attempts to broaden the Data Usage Limitation's scope render their pre-enforcement challenge justiciable.

### A.      Plaintiffs' reading of the Data Usage Limitation would create absurd results and render the word "facilitate" superfluous.

For their part, plaintiffs do not dispute that anti-fraud or rewards programs facilitate electronic payment transactions.  Instead, they maintain that the Data Usage Limitation proscribes their use of transaction data to maintain anti-fraud and rewards programs because of a single word:  "the."  IBA Br. 62-64.  According to plaintiffs, because the Data Usage Limitation refers to data used to "facilitate or process *the* electronic payment transaction," the statute permits only the use of data strictly necessary to complete a *single* transaction, nothing more.  815 ILCS 151/150-15(b) (emphasis added).  In other words, plaintiffs contend, one word unambiguously demonstrates that the Illinois General Assembly intended to broadly prohibit activities that benefit consumers and limit criminal activity.

Plaintiffs' proposed interpretation is precisely the type of "overly literal" reading of statutory language that Illinois courts eschew.  *People v. Nance*, 2024 IL App (3d) 230365, ¶ 10; *see In re Ill. Bell Switching Station Litig.*, 161 Ill. 2d 233, 246 (1994) ("A statute . . . must receive a sensible construction, even though such

construction qualifies the universality of its language.").  Under Illinois law, "[l]egislative intent is not to be ascertained by a myopic concentration upon a single word," *People ex rel. Oak Supply & Furniture Co. v. Dep't of Revenue*, 62 Ill. 2d 210, 214 (1976), but instead by considering a statute's language in light of its "purpose," "the evils sought to be remedied," and the "consequences that would result from" adopting a certain construction of the law, *State ex rel. Raoul v. Elite Staffing, Inc.*, 2024 IL 128763, ¶ 16 (cleaned up).

As explained in the Attorney General's brief, the Data Usage Limitation is best read as a prohibition against unauthorized, commercial use of consumers' transaction data, which would serve the statute's purpose of protecting Illinois consumers while also allowing banks to carry out functions that benefit their customers.  AG Br. 63.  In contrast, plaintiffs fail to explain why, in a consumer-protection law, the legislature would have intended to strip consumers of the benefit of rewards programs or to subject them to a heightened risk of fraud.  They do not mention the Data Usage Limitation's reference to the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/1 *et seq.*, *see* IBA Br. 60-68, which suggests that the legislature intended the Data Usage Limitation to protect, not harm, consumers, *see* AG Br. 62; *McIntosh v. Walgreens Boots All., Inc.*, 2019 IL 123626, ¶ 20 ("The Consumer Fraud Act is a regulatory and remedial statute intended to protect consumers, borrowers, and business persons against fraud, unfair methods of competition, and other unfair and deceptive business practices.").  Read within that context, the legislature's use of the broad term "facilitate" demonstrates

its intent to allow participants in the electronic payment system the ability to continue engaging in many activities that offer consumers benefits or protect them from fraud.

Plaintiffs also do not adequately explain how the word "facilitate" would have any meaning independent of the word "process" if, as the district court concluded, the Data Usage Limitation prohibits all uses of data "outside of conduct formally necessary to facilitate a transaction from Point A to Point B." Doc. 179 at 11; *see* AG Br. 60. Plaintiffs insist "[t]here is no superfluity problem" because "a participant could 'process' a transaction by approving it or moving the funds, or 'facilitate' it by providing infrastructure enabling others to do so." IBA Br. 64. But in that hypothetical, the use of transaction data to provide payment infrastructure would be using such data to "process the electronic payment transaction." 815 ILCS 151/150-15(b); *see* Doc. 24-12 at 5 (attesting that Mastercard "provide[s] the infrastructure for *processing* payments" (emphasis added)). Thus, the word "facilitate" would add nothing to the Data Usage Limitation, defying the principle that, when possible, words should not be "rendered superfluous or meaningless." *People v. Reed*, 2025 IL 130595, ¶ 25.

Next, plaintiffs contend that this court should not interpret the Data Usage Limitation to avoid an absurd result, noting that Illinois courts only "'[i]nterpret[ ] legislation to mean something other than what it *clearly* says [as] a measure of last resort.'" IBA Br. 64 (quoting *Manago v. Cnty. of Cook*, 2017 IL 121078, ¶ 14) (emphasis added). But as explained, it is hardly clear that the Illinois General

Assembly intended to penalize a wide range of otherwise lawful conduct that benefits Illinois consumers simply because it used the word "the" in the Data Usage Limitation. And although plaintiffs try to minimize the doctrine that statutes should be interpreted to avoid absurd or unjust results, the Illinois Supreme Court does not hesitate to apply that principle. *See*, *e.g.*, *Elite Staffing*, 2024 IL 128763, ¶ 33 (declining to read literally "the broad language" of a provision that "conflict[ed] with the purpose of the Illinois Antitrust Act"); *People v. Johnson*, 2017 IL 120310, ¶ 21 (declining to adopt "literal reading of the statute" that was "at odds with the purpose of the statute"); *People ex rel. Ill. Dep't of Corrs. v. Hawkins*, 2011 IL 110792, ¶ 34 (rejecting "literal interpretation" of statutes that would "produce[ ] a result that is absurd, unjust, and that . . . was not contemplated by the legislature"); *Andrews v. Kowa Printing Corp.*, 217 Ill. 2d 101, 107-08 (2005) (rejecting literal reading of statute that would expand potential liability beyond what the legislature could have intended).

Similarly, plaintiffs' two attempts at distinguishing the Data Usage Limitation from the statute at issue in *Andrews*, 217 Ill. 2d 101, are unavailing. First, plaintiffs note that, in *Andrews*, it would have been "absurd" for the Illinois Supreme Court to interpret the Illinois Wage Payment and Collection Act ("Wage Act"), 820 ILCS 115/1 *et seq.*, as imposing liability on "every supervisory employee" of a company. IBA Br. 65 (cleaned up). Yet they make no effort to explain why the district court's similarly broad construction of the Data Usage Limitation is any different. Their conclusory assertion that *Andrews* is inapposite does not merit consideration. *See Gross v. Town*

*of Cicero, Ill.*, 619 F.3d 697, 704 (7th Cir. 2010) ("It is not this court's responsibility to . . . construct the parties' arguments, and conclusory analysis will be construed as waiver." (cleaned up)).

Second, plaintiffs note that, in *Andrews*, the Illinois Supreme Court declined to adopt a literal reading that would have rendered a different provision of the Wage Act superfluous. IBA Br. 65; *see Andrews*, 217 Ill. 2d at 109-10. But that is similar to plaintiffs' proposed interpretation of the Data Usage Limitation, which would negate provisions of the Banking Act that authorize the use of data for rewards programs and anti-fraud measures. *See* AG Br. 62-63; 205 ILCS 5/48.1(b)(17)(A), (18). Just as the court in *Andrews* interpreted the Wage Act to avoid negating other provisions of that statute, this court should interpret the Data Usage Limitation to avoid unnecessary conflict with the Banking Act. *See Ferguson v. McKenzie*, 202 Ill. 2d 304, 311-12 (2001) ("Where there is an alleged conflict between two statutes, a court has a duty to interpret those statutes in a manner that avoids an inconsistency and gives effect to both statutes, where such an interpretation is reasonably possible.").

### B. Plaintiffs' proposed interpretation would create unnecessary conflicts with the Banking Act and defy Illinois canons of statutory interpretation.

Nor do plaintiffs have any meaningful response to the conflict that their reading of the Data Usage Limitation would create with the Banking Act. They do not dispute that the Banking Act authorizes banks to use data to detect fraud and administer rewards programs, or that their reading of the Data Usage Limitation would prohibit that same conduct. Instead, they simply ask this court to brush off

that conflict, asserting that "[t]here is nothing remarkable about the legislature declining to subject particular conduct to one enforcement scheme and set of remedies and instead subjecting it to another," since "later-enacted statutes control over earlier statutes, and more-specific statutes control over general acts." IBA Br. 66 (cleaned up).

If anything, the interpretive canons that plaintiffs invoke further demonstrate that the Data Usage Limitation should not be read as a broad prohibition on the use of data for fraud prevention or customer rewards. Indeed, "the canon that the specific governs the general applies with special force where . . . the earlier provision is specific and the later, general provision makes no mention of the earlier provision." *People ex rel. Madigan v. Burge*, 2014 IL 115635, ¶ 32. That is because "repeals by implication are disfavored," such that "'a later statute general in its terms and not expressly repealing the prior special statute will ordinarily not affect the special provisions of the earlier statute.'" *Id.* (quoting *People ex rel. Atwell Printing & Binding Co. v. Bd. of Comm'rs*, 345 Ill. 172, 178 (1931)).

Here, the Banking Act is more specific than the Data Usage Limitation — it specifically authorizes "disclosure of financial records or information . . . in connection with . . . servicing or processing a financial product or service requested or authorized by the customer," such as a rewards program, 205 ILCS 5/48.1(b)(17)(A), as well as the "disclosure of financial records or information as necessary to protect against actual or potential fraud, unauthorized transactions, claims, or other liability," *id.* § 48.1(b)(18). By contrast, the Data Usage Limitation speaks to the

general "distribut[ion], exchange, transfer, disseminat[ion], or use [of] electronic payment transaction data," without specifically addressing the use of transaction data for customer-authorized services or fraud prevention. 815 ILCS 151/150-15(b). In this circumstance, this court should construe the "specific . . . permission" set forth in the Banking Act as an exception to the "general . . . prohibition" of the Data Usage Limitation, *Kloeppel v. Champaign Cnty. Bd.*, 2022 IL 127997, ¶ 22 (cleaned up), rather than assuming that the legislature implicitly repealed provisions of the Banking Act by using the word "the" in the Data Usage Limitation.

C.     **Plaintiffs' anti-money laundering programs and internal analyses of transaction data are not arguably proscribed by the Data Usage Limitation.**

Plaintiffs also assert that the Data Usage Limitation proscribes conduct other than fraud-prevention and rewards programs, contending that the "record establishes" that their members also use data for "anti-money-laundering monitoring," scoring credit risks, and "analyzing [their] business[es], acquisition[s], and attrition trending." IBA Br. 63-64, 66-67 (citing Doc. 24-11 at 10). But the Data Usage Limitation does not prohibit these activities, either. As for anti-money-laundering activities, federal regulations require banks to maintain "anti-money laundering program[s]," *see* 31 C.F.R. § 1020.210(a), (b), develop procedures to identify customers engaging in potential money laundering, *id.* § 1020.220(a), and "report . . . any suspicious transaction[s] relevant to a possible violation of law or regulation" to the United States Treasury Department, *id.* § 1020.320(a)(1). The

disclosure of data to prevent money laundering is thus "required by law" and outside

the Data Usage Limitation's scope.  815 ILCS 151/150-15(b).

As for the banks' "internal analys[e]s" of transaction data for their businesses,

acquisitions, credit risk assessments, or attrition trending, *see* Doc. 24-11 at 11, these

also are not prohibited by the Data Usage Limitation.  Internal use of transaction

data is not the type of "distribut[ion], exchange, transfer, disseminat[ion], or use"

that the Data Usage Limitation prohibits.  815 ILCS 151/150-15(b).   The words

"distribute, exchange, transfer, [and] disseminate" all connote some type of *external*

transmission of data, not a bank's *internal* use of transaction data to analyze its

operations.  *See Disseminate*, Merriam-Webster Online Dictionary,

https://bit.ly/4tnGSNN (last visited May 1, 2026) ("to spread abroad" or "to disperse

throughout"); *Distribute*, Black's Law Dictionary (12th ed. 2024) (to "deliver,"

"spread out," or "disperse"); *Exchange*, Merriam-Webster Online Dictionary,

https://bit.ly/4tXmt27 (last visited May 1, 2026) ("to part with, give, or transfer in

consideration of something received as an equivalent"; "to give and receive

reciprocally"); *Transfer*, Black's Law Dictionary (12th ed. 2024) ("To convey or

remove from one place or one person to another; to pass or hand over from one to

another"; "To sell or give").

Nor should the word "use" be read broadly to prohibit internal uses of data, as

"words grouped in a list should be given related meaning."  *Dynak v. Bd. of Educ. of

Wood Dale Sch. Dist. No. 7*, 2020 IL 125062, ¶ 22.  In fact, that principle is

"particularly useful" when, as here, "one term in a list" should be construed "to

11

avoid ascribing . . . a meaning so broad that it is inconsistent with its accompanying words, thus giving unintended breadth to legislative acts." *Corbett v. Cnty. of Lake*, 2017 IL 121536, ¶ 32 (cleaned up). Accordingly, "use" should be read in context with "distribute, exchange, transfer, [or] disseminate," as meaning some external use of transaction data. Plaintiffs' members' internal analyses of transaction data, therefore, are not proscribed by the Data Usage Limitation.

**D. Plaintiffs' speculation about the Attorney General's future litigation positions and the Illinois Supreme Court's interpretation of the Data Usage Limitation do not confer standing.**

Unable to identify any of their members' conduct that would violate the Data Usage Limitation, plaintiffs resort to arguing that they must have standing to bring this challenge because the Attorney General could take "a contrary position if he re-reads the law and decides to enforce its literal terms in state court" and "Illinois courts" could decline to "follow this Court's interpretation of" the Data Usage Limitation. IBA Br. 68. But plaintiffs offered no evidence that this "speculative chain of possibilities," which rests on "speculation about the decisions of independent actors," was even remotely likely, let alone sufficiently imminent to establish standing. *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 414 (2013).

Because plaintiffs did not establish that their members' conduct was arguably proscribed by the Data Usage Limitation, the district court erred in concluding that they had standing to bring a pre-enforcement challenge to that provision. This court should thus reverse the district court's grant of summary judgment and a permanent injunction in plaintiffs' favor.

# CONCLUSION

For these reasons and the reasons stated in the combined appellee/cross-appellant brief, Defendant-Appellee/Cross-Appellant requests that this court affirm the district court's grant of partial summary judgment in the Attorney General's favor, reverse the grant of partial summary judgment in plaintiffs' favor, and reverse the permanent injunction entered against the Attorney General.

Respectfully submitted,

**KWAME RAOUL**
Attorney General
State of Illinois

**JANE ELINOR NOTZ**
Solicitor General

115 South LaSalle Street
Chicago, Illinois 60603
(312) 814-3000

Attorneys for Defendant-Appellee/Cross-Appellant

/s/ Carson R. Griffis
**CARSON R. GRIFFIS**
Assistant Attorney General
115 South LaSalle Street
Chicago, Illinois 60603
(312) 814-2447 (office)
(773) 505-5282 (cell)
Carson.Griffis@ilag.gov

May 1, 2026

**CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATION, TYPEFACE REQUIREMENTS, AND TYPE STYLE REQUIREMENTS**

I hereby certify that this brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and Circuit Rule 32 and the type style requirements of Federal Rule of Appellate Procedure 32(a)(6) because this brief has been prepared in proportionally spaced typeface using Microsoft Word 365, in 12-point Century Schoolbook BT font, and complies with Federal Rule of Appellate Procedure 28.1(e)(2) and Circuit Rule 28.1 in that the brief contains 3,032 words.

/s/ Carson R. Griffis
CARSON R. GRIFFIS
Assistant Attorney General
115 South LaSalle Street
Chicago, Illinois 60603
(312) 814-2447 (office)
(773) 505-5282 (cell)
Carson.Griffis@ilag.gov

# CERTIFICATE OF FILING AND SERVICE

I hereby certify that on May 1, 2026, I electronically filed the foregoing Cross-Reply Brief of Defendant-Appellee/Cross-Appellant with the Clerk of United States Court of Appeals for the Seventh Circuit by using the CM/ECF system.

I further certify that the other participants in this appeal are CM/ECF users, and thus will be served via the CM/ECF system.

<u>/s/ Carson R. Griffis</u>
CARSON R. GRIFFIS
Assistant Attorney General
115 South LaSalle Street
Chicago, Illinois 60603
(312) 814-2447 (office)
(773) 505-5282 (cell)
Carson.Griffis@ilag.gov