Nos. 26-1354, 26-1371, 26-1440, 26-1441 (cons.)

IN THE
UNITED STATES COURT OF APPEALS
FOR THE SEVENTH CIRCUIT

| | | |
|---|---|---|
| ILLINOIS BANKERS ASSOCIATION, AMERICAN BANKERS ASSOCIATION, AMERICA'S CREDIT UNIONS, and ILLINOIS CREDIT UNION LEAGUE, | ) ) ) ) ) | Appeal from the United States District Court for the Northern District of Illinois, Eastern Division |
| Plaintiffs-Appellants/ Cross-Appellees, | ) ) ) | No. 1:24-cv-07307 |
| v. | ) ) | |
| KWAME RAOUL, in his official capacity as Illinois Attorney General, | ) ) ) | |
| Defendant-Appellee/ Cross-Appellant. | ) ) ) | The Honorable VIRGINIA M. KENDALL, Chief Judge Presiding. |

**SUPPLEMENTAL BRIEF OF
DEFENDANT-APPELLEE/CROSS-APPELLANT**

**KWAME RAOUL**
Attorney General
State of Illinois

**JANE ELINOR NOTZ**
Solicitor General
115 South LaSalle Street
Chicago, Illinois 60603
(312) 814-3000

**CARSON R. GRIFFIS**
Assistant Attorney General
115 South LaSalle Street
Chicago, Illinois 60603
(312) 814-2447 (office)
(773) 505-5282 (cell)
Carson.Griffis@ilag.gov

Attorneys for Defendant-
Appellee/Cross-Appellant

## TABLE OF CONTENTS

*Page*

TABLE OF AUTHORITIES ......................................................................................ii

SUMMARY OF ARGUMENT.............................................................................. 1

ARGUMENT ......................................................................................................... 3

I.     The Interim Rule is invalid and, invalidity aside, does not preempt the Interchange Fee Limitation................................................................. 3

     A.     The Interim Rule is invalid because OCC failed to comply with the APA's notice-and-comment requirements ......................................... 3

     B.     APA noncompliance aside, the Interim Rule is invalid because it conflicts with 12 U.S.C. § 25b................................................................. 7

     C.     Even if valid, the Interim Rule does not preempt the Interchange Fee Limitation ...................................................................... 9

II.     The Interim Order is procedurally invalid and substantively irrelevant ......... 10

     A.     OCC failed to comply with the requirements of 12 U.S.C. § 25b ........... 10

     B.     OCC failed to comply with the notice-and-comment requirement of 12 U.S.C. § 43 ....................................................................... 13

     C.     Procedural invalidity aside, the Interim Order is entitled to no deference ....................................................................................... 14

CONCLUSION ..................................................................................................... 16

CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATION, TYPEFACE REQUIREMENTS, AND TYPE STYLE REQUIREMENTS

CERTIFICATE OF FILING AND SERVICE

# TABLE OF AUTHORITIES

*Page(s)*

**Cases**

*Barnett Bank of Marion Cnty., N.A. v. Nelson,*
    517 U.S. 25 (1996) ..................................................................................11

*Bd. of Educ. of Springfield Sch. Dist. No. 186 v. Att'y Gen. of Ill.,*
    2017 IL 120343 .........................................................................................7

*Cal. Pub. Utils. Comm'n v. Fed. Energy Regul. Comm'n,*
    29 F.4th 454 (9th Cir. 2022)....................................................................1

*Conti v. Citizens Bank, N.A.,*
    157 F.4th 10 (1st Cir. 2025) ...................................................................9

*Hoctor v. U.S. Dep't of Agric.,*
    82 F.3d 165 (7th Cir. 1996) .....................................................................3

*JEM Broad. Co. v. F.C.C.,*
    22 F.3d 320 (D.C. Cir. 1994) ..................................................................4

*K Mart Corp. v. Cartier, Inc.,*
    486 U.S. 281 (1988) ................................................................................7

*Lac du Flambeau Bank of Lake Superior Chippewa Indians v. Stop Treaty Abuse-Wis., Inc.,*
    991 F.2d 1249 (7th Cir. 1993) ............................................................6-7

*Loper Bright Enters. v. Raimondo,*
    603 U.S. 369 (2024) .....................................................8, 10, 13, 15

*Mack Trucks, Inc. v. E.P.A.,*
    682 F.3d 87 (D.C. Cir. 2012) ..................................................................4

*Mid Continent Nail Corp. v. United States,*
    846 F.3d 1364 (Fed. Cir. 2017)...............................................................6

*Nat. Res. Def. Council v. Nat'l Highway Traffic Safety Admin.,*
    894 F.3d 95 (2d Cir. 2018).................................................................4, 6

*Pac. Cap. Bank, N.A. v. Connecticut,*
    542 F.3d 341 (2d Cir. 2008)....................................................................8

*Skidmore v. Swift & Co.*,
　　323 U.S. 134 (1944) ................................................................................14

*Sorenson Commc'ns, Inc. v. F.C.C.*,
　　755 F.3d 702 (D.C. Cir. 2014) ...............................................................4, 5

*SPGGC, LLC v. Ayotte*,
　　488 F.3d 525 (1st Cir. 2007).....................................................................8

*Thomas & Betts Corp. v. Panduit Corp.*,
　　138 F.3d 277 (7th Cir. 1998) ....................................................................6

*Toney v. Burris*,
　　881 F.2d 450 (7th Cir. 1989) ..................................................................16

*Watters v. Wachovia Bank, N.A.*,
　　550 U.S. 1 (2007) ......................................................................................8

**Statutes**

5 U.S.C. § 553 ...............................................................................................3, 4

12 U.S.C. § 25b .........................................................................................*passim*

12 U.S.C. § 43 ...........................................................................................13, 14

28 U.S.C. § 2401(a) ..........................................................................................4

815 ILCS 151/150-1 ..........................................................................................1

815 ILCS 151/150-5 ........................................................................................12

815 ILCS 151/150-10(a)...................................................................................11

**Other Authorities**

12 C.F.R. § 7.4002...............................................................................................3

## SUMMARY OF ARGUMENT

Nearly two years after the enactment of the Illinois Interchange Fee Prohibition Act ("Act"), 815 ILCS 151/150-1 *et seq.*, just two months before the Act's effective date, and less than three weeks before oral argument in this appeal, the Office of the Comptroller of the Currency ("OCC") issued two regulatory documents that seek to resolve this case in plaintiffs' favor. But the documents — an amendment to a regulation governing national banks' authority to charge their customers non-interest fees ("Interim Rule") and an interim final order ("Interim Order") stating that section 150-10(a) of the Act ("Interchange Fee Limitation") is preempted by the National Bank Act — do not have that effect or, indeed, any effect on the legal questions presented in this appeal.[1]

Both the Administrative Procedure Act ("APA") and the National Bank Act require the OCC to follow specific procedures before issuing rules and orders of this sort — requirements the OCC transparently disregarded. And on the merits, the Interim Rule contradicts the National Bank Act and does not preempt the

---

[1] OCC also purported to preempt section 150-15(b) of the Act in the Interim Order, but the Attorney General has not challenged the merits of district court's conclusion that the National Bank Act preempts that provision in his cross-appeal. Instead, that provision does not proscribe plaintiffs' proposed conduct, so they lack standing to challenge it, and the Interim Rule cannot confer standing on them. Nor does OCC's interpretation of that provision's scope, which is a question of state law, carry any weight. Interim Order at 15-16; *see Cal. Pub. Utils. Comm'n v. Fed. Energy Regul. Comm'n*, 29 F.4th 454, 464-66 (9th Cir. 2022) (reviewing *de novo* a federal agency's "interpretation of [state] law").

A copy of the Interim Rule was filed in this court at 7th Cir. Doc. 84-2, and a copy of the Interim Order was filed at 7th Cir. Doc. 84-3. This brief cites them, respectively, as "Interim Rule ___" and "Interim Order ___."

1

Interchange Fee Limitation, and the Interim Order does not bind this court or add anything to plaintiffs' flawed preemption arguments.  The court should thus reject OCC's last-minute gambit and affirm the district court's decision with respect to the Interchange Fee Limitation.

## ARGUMENT

### I.    The Interim Rule is invalid and, invalidity aside, does not preempt the Interchange Fee Limitation.

As explained in the Attorney General's combined principal and response brief, OCC's rule on national banks' authority to charge non-interest fees does not authorize national banks to charge interchange fees set by payment card networks, such that it could potentially preempt the Interchange Fee Limitation.  AE Br. 28 (citing 12 C.F.R. § 7.4002).[2]  The Interim Rule purportedly amends that regulation by granting national banks the authority to "assess, collect, impose, levy, receive, reserve, take, or otherwise obtain" interchange fees through "intermediaries, partners, payment networks, interchanges or other third parties."  Interim Rule at 19-20.  But OCC's effort to give plaintiffs a new rule with preemptive effect is procedurally invalid, contrary to the plain text of the National Bank Act, and does not preempt the Interchange Fee Limitation in any event.

### A.    The Interim Rule is invalid because OCC failed to comply with the APA's notice-and-comment requirements.

The APA requires administrative agencies to afford interested persons notice and an opportunity to comment on proposed regulations, 5 U.S.C. § 553(b), (c), and noncompliance with that requirement renders a regulation "invalid," *Hoctor v. U.S. Dep't of Agric.*, 82 F.3d 165, 167 (7th Cir. 1996).  Here, OCC made no effort to comply

---

[2]  This brief cites plaintiffs' opening brief as "AT Br. ___," the Attorney General's combined response and opening brief as "AE Br. ___," plaintiffs' combined reply and response brief as "RY Br. ___," OCC's appellate *amicus* brief as "OCC Br. ___," the Illinois Retail Merchants Association's appellate *amicus* brief as "IRMA Br. ___," and the district court docket as, "Doc. ___."

with the APA's notice-and-comment provisions, instead invoking an exception for when notice-and-comment rulemaking would be "impracticable."  Interim Rule at 9-11.[3]  For at least two reasons, OCC's invocation of that exception fails.[4]

First, "[i]mpracticality . . . is generally confined to emergency situations in which a rule would respond to an immediate threat to safety, such as to air travel, or when immediate implementation of a rule might directly impact public safety."  *Nat. Res. Def. Council v. Nat'l Highway Traffic Safety Admin.* ("*NRDC*"), 894 F.3d 95, 114 (2d Cir. 2018).  And although courts have recognized that "systemic" economic issues affecting "an entire industry" might render notice-and-comment impracticable, impracticability is "narrowly construed and only reluctantly countenanced," and so does not exist "every time a [business] in a regulated field [feels] a new regulation impose[s] some degree of economic hardship."  *Mack Trucks, Inc. v. E.P.A.*, 682 F.3d 87, 93-94 (D.C. Cir. 2012) (cleaned up); *see, e.g., id.* (harm to manufacturer's "bottom line" and possible "resulting up- and down-stream impacts" insufficient).  And in all events, mere "[c]ause for concern" does not support a finding of impracticability.  *Sorenson Commc'ns, Inc. v. F.C.C.*, 755 F.3d 702, 707 (D.C. Cir.

---

[3]  The APA also sets forth exceptions to notice-and-comment rulemaking when it is "unnecessary" or "contrary to the public interest," 5 U.S.C. § 553(b)(4)(B), but OCC did not invoke them, *see* Interim Rule at 8-14.

[4]  The Attorney General may raise the Interim Rule's procedural invalidity as a defense to plaintiffs' preemption argument.  Although a party raising a "procedural infirmity" with a regulation as a defense cannot do so "outside of the statutory limitations period," *JEM Broad. Co. v. F.C.C.*, 22 F.3d 320, 324 (D.C. Cir. 1994) (cleaned up), these arguments are being raised within the APA's six-year limitations period, *see* 28 U.S.C. § 2401(a).

4

2014); *see, e.g., id.* at 706 (finding that "absent Commission action, there *could* be insufficient funds available" to compensate industry members was insufficient (cleaned up and emphasis in original)).

Yet OCC merely speculated as to the possible effects of the Interchange Fee Limitation on some banks — it cited no "evidence" of impending, industry-wide "fiscal calamity*." Id.* at 707. The Interim Rule refers to "significant *potential* liability for non-compliance" with the Interchange Fee Limitation, but does not actually cite any threat of imminent enforcement of that provision. Interim Rule at 9 (emphasis added). It also says that "national banks *may* take drastic actions to avoid" the Interchange Fee Limitation's alleged effects, "up to and including declining payment card transactions," *id.* (emphasis added), but it merely cites a letter from one of the *plaintiffs in this case* relaying second-hand speculation about inchoate business plans of an unspecified number of "smaller and mid-sized" banks. *See* Interim Rule at 9 & n.17 (citing letter from American Bankers Association).[5] And it cites a declaration from an *Illinois state-chartered bank* for the proposition that the Interchange Fee Limitation might lead "smaller banks" to stop offering payment cards, *see* Interim Rule at 13-14 (citing Doc. 24-4), which is not evidence that national banks face an industry-wide emergency.

---

[5] "We are also *hearing* that *some* issuing financial institutions — particularly smaller and mid-sized banks — . . . have indicated they *may* simply cease issuing credit or debit cards to their customers, while also *exploring options* for declining card transactions in Illinois." Interim Rule at 9, n.17 (emphases added).

Second, even if there was an emergency, an "emergency of the agency's own making" cannot "constitute good cause" for avoiding notice-and-comment rulemaking. *NRDC*, 894 F.3d at 115 (cleaned up). OCC's alleged concerns arise from the Act's July 1, 2026 effective date, *see* Interim Rule at 10, but "statutory deadlines in and of themselves do not generally provide a basis for invoking . . . impracticability," *Mid Continent Nail Corp. v. United States*, 846 F.3d 1364, 1381 (Fed. Cir. 2017). Indeed, a "contrary rule would encourage administrative gamesmanship because an agency . . . could simply wait until the eve of a statutory . . . deadline, then raise up the good cause banner and promulgate rules without following APA procedures." *Id.* (cleaned up).

That is exactly what occurred here. In the Interim Rule, OCC acknowledges that the Act was enacted on June 7, 2024, *see* Interim Rule at 10, and a year later, its effective date was delayed to July 1, 2026, AE Br. 7. Thus, OCC had nearly two years to promulgate a rule to address any "confusion" created by the Act, Interim Rule at 8, but it elected to participate in this litigation as an *amicus curiae* instead, *see* Doc. 61; OCC Br.

And although the district court partially enjoined the Interchange Fee Limitation in December 2024, OCC should not have assumed that plaintiffs would obtain a permanent injunction that might moot any rulemaking. After all, conclusions of law made at the preliminary-injunction stage "are not binding" at the case's later stages. *Thomas & Betts Corp. v. Panduit Corp.*, 138 F.3d 277, 291 (7th Cir. 1998); *see Lac du Flambeau Bank of Lake Superior Chippewa Indians v. Stop*

6

*Treaty Abuse-Wis., Inc.*, 991 F.2d 1249, 1258 (7th Cir. 1993) ("advis[ing] district courts to be cautious in adopting conclusions of law made in ruling on a preliminary injunction" because such conclusions "inevitably entail[ ] incomplete evidentiary materials and hurried consideration of the issues").  Indeed, the Attorney General *expressly explained* that a preliminary injunction "w[ould] not relieve plaintiffs' members of the need to begin preparing now to comply with the Act," since it could "be vacated at any time."  Doc. 76 at 28-29.

Furthermore, even a permanent injunction against the Attorney General would not have alleviated OCC's alleged concerns with the Interchange Fee Limitation.  As the Attorney General explained below, such an injunction would not bind Illinois's various State's Attorneys or affected merchants, who might bring actions for violations of the Interchange Fee Limitation.  *See* Doc. 75 at 2; Doc. 76 at 17-18, 21-23.  And in any such action brought in Illinois court, a district court order holding that the Interchange Fee Limitation was preempted would not be binding. *See Bd. of Educ. of Springfield Sch. Dist. No. 186 v. Att'y Gen. of Ill.*, 2017 IL 120343, ¶ 54 ("federal district court cases have no precedential value in Illinois courts"). Thus, the district court proceedings were no excuse for OCC's inexplicable delay in promulgating the Interim Rule.

### B.    APA noncompliance aside, the Interim Rule is invalid because it conflicts with 12 U.S.C. § 25b.

Even if OCC's noncompliance with the APA could be excused, the Interim Rule would be invalid because it conflicts with the text of the National Bank Act.  *K Mart Corp. v. Cartier, Inc.*, 486 U.S. 281, 291 (1988) (regulation is "valid" if it "is

7

consistent with the language of the statute"). This court answers that legal question *de novo*, without deferring to the OCC's reading even in the face of any ambiguity. *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 412 (2024).

Specifically, by purporting to preempt state laws applicable to national banks' assessment and receipt of interchange fees "through . . . payment networks . . . or other third parties," Interim Rule at 19, the Interim Rule conflicts with the National Bank Act provision stating that no provision of that Act "shall be construed as preempting, annulling, or affecting the applicability of State law to any subsidiary, affiliate, or agent of a national bank," 12 U.S.C. § 25b(h)(2). That provision, which was enacted to abrogate *Watters v. Wachovia Bank, N.A.*, 550 U.S. 1 (2007), and its progeny, precludes OCC from attempting to revive that precedent through its rulemaking authority.

In *Watters*, the Supreme Court held that the National Bank Act preempted state laws significantly interfering with "the 'business of banking' whether conducted by the bank itself or by an operating subsidiary." *Id.* at 21. Relying on *Watters*, lower courts later held that state laws regulating "only non-bank entities" would be preempted if those entities were "acting as agents for national banks with respect to a particular [National Bank Act]-authorized activity" and the state laws "significantly interfere[d] with" those agents' exercise of that authority. *Pac. Cap. Bank, N.A. v. Connecticut*, 542 F.3d 341, 353 (2d Cir. 2008); *see also SPGGC, LLC v. Ayotte*, 488 F.3d 525, 533 (1st Cir. 2007) (States were preempted if they "prohibited

non-bank firms from providing national banks with the resources to carry out their banking activities.").

But, as plaintiffs concede, *see* RY Br. 55-56, Congress abrogated this precedent by amending the National Bank Act to provide that it cannot "be construed as preempting, annulling, or affecting the applicability of State law to any subsidiary, affiliate, or agent of a national bank" unless that subsidiary, affiliate, or agent also "is chartered as a national bank."  12 U.S.C. § 25b(h)(2); *see Conti v. Citizens Bank, N.A.*, 157 F.4th 10, 16 (1st Cir. 2025) (recognizing *SPGGC*'s abrogation).  Thus, state law is not preempted as to nonbank entities, even if they act on national banks' behalf.

Yet the Interim Rule seeks to reinstate *Watters* by providing that national banks have authority to establish or receive interchange fees through "third parties." *See* Interim Rule at 19.  Although the Interim Rule does not explicitly state that preemption applies to "subsidiar[ies], affiliate[s], or agent[s]" of national banks, 12 U.S.C. § 25b(h)(2), it plainly attempts to expand National Bank Act preemption to "third parties" that exercise national banks' authority, which is no different than an administrative attempt to revive *Watters* and its progeny.  Because Congress repudiated that standard, the Interim Rule is invalid.

### C.    Even if valid, the Interim Rule does not preempt the Interchange Fee Limitation.

Under the National Bank Act, a state law regulating national banks is not preempted unless it is discriminatory or significantly interferes with national banks' exercise of their powers.  12 U.S.C. § 25b(b)(1)(B).  As explained in the Attorney

9

General's brief, a state law does not significantly interfere with national banks' authority unless it actually or effectively prohibits national banks from exercising their express authority under federal law. *See* AE Br. 19-25.

Even if the Interim Rule's effort to vest national banks with authority to receive fees set by payment card networks were valid, the Interchange Fee Limitation does not prohibit such receipt. *Id.* at 28-29. Instead, it exempts a fraction of a transaction from these fees, and plaintiffs offered no evidence that this limit on interchange fees would make their receipt impractical or cost prohibitive such that national banks effectively cannot receive these fees. *See id.* at 28-31. Thus, invalidity aside, the Interim Rule does not resolve this appeal in plaintiffs' favor.

## II. The Interim Order is procedurally invalid and substantively irrelevant.

The Interim Order purportedly concludes that the National Bank Act preempts the Interchange Fee Limitation, but OCC made no effort to comply with the procedural prerequisites for reaching that conclusion. And procedural invalidity aside, the Interim Order merits no deference and carries no weight. *Loper Bright*, 603 U.S. at 396-98. This court should disregard it.

### A. OCC failed to comply with the requirements of 12 U.S.C. § 25b.

In making "any preemption determination" as to any "State consumer financial law," OCC must follow multiple procedures meant to ensure that its preemption determinations are well-reasoned and reflect input from all parties. *See* 12 U.S.C. § 25b(b)(1)(B). OCC disregarded at least two of them in issuing the Interim Order.

For example, the Interim Order was issued by the First Deputy Comptroller of the Currency, Interim Order at 27, but preemption determinations must "be made by the Comptroller, and shall not be delegable to another officer or employee of the Comptroller of the Currency," 12 U.S.C. § 25b(b)(6).  And the Interim Order describes no evidentiary proceedings, even though OCC cannot make a determination that a state law is preempted "unless substantial evidence, made on the record of the proceeding, supports the specific finding regarding the preemption of such provision in accordance with the legal standard of the decision of the Supreme Court of the United States in *Barnett Bank of Marion County, N.A. v. Nelson, Florida Insurance Commissioner, et al.*, 517 U.S. 25 (1996)." *Id.* § 25b(c).

OCC tries to skirt these procedures by asserting — for the first time — that the Act is not a "State consumer financial law" subject to section 25b.  Interim Order at 15.  According to OCC, the Interchange Fee Limitation "directly and specifically regulate[s] the manner, content, or terms and conditions of a financial transaction," but only regulates an "interchange fee transaction . . . between a merchant and the other participants in the card network (*e.g.*, issuer bank, acquirer bank), [not] a consumer." *Id.*; *see* 12 U.S.C. § 25b(a)(2) (state consumer financial law is one that "does not directly or indirectly discriminate against national banks and that directly and specifically regulates the manner, content, or terms and conditions of any financial transaction  . . . with respect to a consumer").

OCC's new position ignores that the Interchange Fee Limitation applies to "an *electronic payment transaction*," 815 ILCS 151/150-10(a) (emphasis added), which is

defined as "a transaction in which a *person* uses a debit card, a credit card, or other payment code or device issued or approved through a payment card network," *id.* § 151-5 (emphasis added). And it defines "person" to include "any *individual*." *Id.* (emphasis added). By regulating individuals' electronic payment transactions, the Interchange Fee Limitation clearly "regulates the manner, content, or terms and conditions of any financial transaction . . . with respect to a consumer." 12 U.S.C. § 25b(a)(2). Nor does the Interchange Fee Limitation "directly or indirectly discriminate against national banks," *id.*, as it applies to any "entity that facilitates, services, processes, or manages the debit or credit authorization, billing, transfer, payment procedures, or settlement with respect to any electronic payment transaction," 815 ILCS 151/150-5.

Furthermore, OCC's effort to avoid section 25b's procedural requirements is irreconcilable with its repeated invocation of section 25b in both the Interim Order and its *amicus* briefs in this case. Indeed, OCC cites section 25b as a source of its authority to issue the Interim Order. *See* Interim Order at 5, n.11. The Interim Order also conducts its preemption analysis under the *Barnett Bank* standard, which is the precise analysis required under section 25b(b)(1). *See id.* at 6-15; *see also* 12 U.S.C. § 25b(1)(B) ("State consumer financial laws are preempted, only if . . . in accordance with the legal standard for preemption in the decision of the Supreme Court of the United States in *Barnett Bank* . . . , the State consumer financial law prevents or significantly interferes with the exercise by the national bank of its powers; and any preemption determination under this subparagraph may be made by

12

. . . order of the Comptroller . . . on a case-by-case basis, in accordance with applicable law[.]"). Similarly, in its *amicus* briefs, OCC advocated for application of the *Barnett Bank* standard and cited section 25b for the proposition that its opinion on preemption was entitled to weight. *See* Doc. 61-1 at 9-10, 12-19; OCC Br. 4, 8-16, 20-21. If OCC's current position that the Act is not a "State consumer financial law" were correct, then these invocations of section 25b were wrong, and *Barnett Bank* would not apply. *See* 12 U.S.C. § 25b(b)(1)(B) (applying *Barnett Bank* to "State consumer financial law[s]").

OCC's about-face — transparently made to evade its procedural obligations under the National Bank Act — should be disregarded, *see Loper Bright*, 603 U.S. at 370 (courts should evaluate agency's "consistency with earlier . . . pronouncements" in evaluating weight of its interpretations of law (cleaned up)), and, given OCC's conceded failure to comply with section 25b's procedural requirements, the Interim Order should be disregarded as well.

**B.     OCC failed to comply with the notice-and-comment requirement of 12 U.S.C. § 43.**

Even if the procedural requirements of 12 U.S.C. § 25b did not apply, OCC still failed to comply with the requirement that it publish notice of the proposed preemption determination in the Federal Register, give "interested parties not less than 30 days . . . to submit written comments," and "consider any comments received" in "developing the final opinion letter or interpretive rule issued." 12

13

U.S.C. § 43(a).[6]  Instead, OCC again invoked a patently inapplicable exception to the notice-and-comment requirement, for situations where an immediate determination "is necessary to avoid a serious and imminent threat to the safety and soundness of any national bank."  *Id.* § 43(c)(3)(A).

As explained above, OCC cited no evidence of any imminent threat to a national bank's safety or soundness in the Interim Rule, yet OCC relies on the same evidence in the Interim Order, including the hearsay speculation of one of the plaintiffs in this case.  *See supra* p. 5; Interim Order at 16-17 & n.68.  And even if such evidence existed, OCC's own delay caused any emergency.  *See supra* pp. 6-7.  Furthermore, any suggestion that national banks' soundness would be threatened is belied by the fact that banks continue to operate in Europe and Australia, where interchange fees are capped at a fraction of those in the United States.  *See* IRMA Br. 4.  This court should reject OCC's misguided effort to evade notice-and-comment rulemaking to salvage plaintiffs' appeal.

### C.    Procedural invalidity aside, the Interim Order is entitled to no deference.

As OCC acknowledged, its view that the Interchange Fee Limitation is preempted is entitled to, at most, "weight" under *Skidmore v. Swift & Co.*, 323 U.S. 134 (1944).  OCC Br. 9.  Indeed, Congress has withdrawn any greater authority from

---

[6] Although OCC noted that it would publish the Interim Order in the Federal Register and give interested parties opportunity to comment, it did not say that it would decline to enforce the Interim Order until it had considered comments. Interim Order at 5.  Instead, it stated that the Interim Order would take effect on June 30, 2026, and invoked an exception to the notice-and-comment requirement. *Id.* at 1, 16-17.

OCC.  *See* 12 U.S.C. § 25b(b)(5)(A) (incorporating *Skidmore* when court is "assess[ing] the validity of" OCC preemption determinations).  Thus, the weight this court should give the Interim Order depends on "the thoroughness evident in its consideration, the validity of its reasoning, its consistency with earlier and later pronouncements, and all those factors which give it power to persuade." *Loper Bright*, 603 U.S. at 388 (cleaned up); *see* 12 U.S.C. § 25b(b)(5)(A) (similar).

Most of OCC's reasoning in the Interim Order is premised on the Interim Rule's existence.  *See* Interim Order at 9, 12.  As explained *supra* pp. 3-10, the Interim Rule is invalid, or, alternatively, does not preempt the Interchange Fee Limitation.  And OCC's remaining reasons for concluding that the Interchange Fee Limitation is preempted merely rehash plaintiffs' briefs and OCC's *amicus* brief, which do not establish preemption for the reasons set forth in the Attorney General's combined principal and response brief.  AE Br. 18-37.

## CONCLUSION

For these reasons and the reasons in his prior briefs, the Attorney General requests that this court affirm the district court's partial judgment in his favor and reverse the district court's partial judgment and permanent injunction against him. Alternatively, the Attorney General requests that this court remand to allow the district court to determine the Interim Rule and Interim Order's validity and preemptive effect. *See Toney v. Burris*, 881 F.2d 450, 454 (7th Cir. 1989) (remanding for consideration of effect of "new regulations").

Respectfully submitted,

**KWAME RAOUL**
Attorney General
State of Illinois

**JANE ELINOR NOTZ**
Solicitor General

115 South LaSalle Street
Chicago, Illinois 60603
(312) 814-3000

Attorneys for Defendant-
Appellee/Cross-Appellant

/s/ Carson R. Griffis
**CARSON R. GRIFFIS**
Assistant Attorney General
115 South LaSalle Street
Chicago, Illinois 60603
(312) 814-2447 (office)
(773) 505-5282 (cell)
Carson.Griffis@ilag.gov

May 6, 2026

16

**CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATION, TYPEFACE REQUIREMENTS, AND TYPE STYLE REQUIREMENTS**

I hereby certify that this supplemental brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and Circuit Rule 32 and the type style requirements of Federal Rule of Appellate Procedure 32(a)(6) because this brief has been prepared in proportionally spaced typeface using Microsoft Word 365, in 12-point Century Schoolbook BT font, and complies with this court's April 29, 2026 order in that the brief contains 3,855 words.

/s/ Carson R. Griffis
CARSON R. GRIFFIS
Assistant Attorney General
115 South LaSalle Street
Chicago, Illinois 60603
(312) 814-2447 (office)
(773) 505-5282 (cell)
Carson.Griffis@ilag.gov

## CERTIFICATE OF FILING AND SERVICE

I hereby certify that on May 6, 2026, I electronically filed the foregoing Supplemental Brief of Defendant-Appellee/Cross-Appellant with the Clerk of United States Court of Appeals for the Seventh Circuit by using the CM/ECF system.

I further certify that the other participants in this appeal are CM/ECF users, and thus will be served via the CM/ECF system.

/s/ Carson R. Griffis
CARSON R. GRIFFIS
Assistant Attorney General
115 South LaSalle Street
Chicago, Illinois 60603
(312) 814-2447 (office)
(773) 505-5282 (cell)
Carson.Griffis@ilag.gov