**Nos. 26-1354 (lead), 26-1371, 26-1440, 26-1441**

**IN THE**
**UNITED STATES COURT OF APPEALS**
**FOR THE SEVENTH CIRCUIT**

_____

ILLINOIS BANKERS ASSOCIATION, AMERICAN BANKERS
ASSOCIATION, AMERICA'S CREDIT UNIONS, and
ILLINOIS CREDIT UNION LEAGUE,

Plaintiffs-Appellants and Cross-Appellees,

v.

KWAME RAOUL, in his official capacity as Illinois Attorney General,

Defendant-Appellee and Cross-Appellant.

_____

**On Appeal from the United States District Court**
**for the Northern District of Illinois**
**(D.C. No. 24-cv-7307)**

_____

**SUPPLEMENTAL BRIEF OF AMICUS CURIAE**
**THE OFFICE OF THE COMPTROLLER OF THE CURRENCY**
**IN SUPPORT OF PLAINTIFFS-APPELLANTS**

_____

WILL C. GILES, Principal Deputy Chief Counsel
BRIAN P. HUDAK, Deputy Chief Counsel
PETER C. KOCH, Director for Litigation
AMBER N. MELTON, Asst. Director for Litigation
ASHLEY W. WALKER, Special Counsel
HANNAH HICKS, Counsel
KRISTIN M. MCMANUS, Attorney
400 Seventh Street, SW
Washington, DC 20219
(202) 649-6300

_Counsel for Amicus Curiae_
_the Office of the Comptroller of the Currency_

**TABLE OF CONTENTS**

TABLE OF CONTENTS ........................................................................................................... i

TABLE OF AUTHORITIES ..................................................................................................... ii

INTRODUCTION ................................................................................................................... 1

OCC'S INTERESTS AND AUTHORITIES ........................................................................... 2

BACKGROUND ...................................................................................................................... 3

    I.    Interim Final Rule ................................................................................................... 3

    II.   Interim Final Order ................................................................................................ 4

ARGUMENT ........................................................................................................................... 4

    I.    The Court Should Conclude that the IFPA is Preempted by the National Bank Act and HOLA with Respect to National Banks and Federal Savings Associations. ....................... 4

    II.    The Court Should Abstain From Deciding Whether Existing Regulations Preempt the IFPA In Light of the OCC's Interim Actions. .................................................................. 6

CONCLUSION ........................................................................................................................ 9

## TABLE OF AUTHORITIES

**Cases**

*Aguayo v. U.S. Bank*,
653 F.3d 912 (9th Cir. 2011) ......................................................................... 3

*Cantero v. Bank of Am., N.A.*,
No. 21-0400, 2026 WL 1217467 (2d Cir. May 5, 2026) ............................... 5

*City of Chicago v. Bureau of Alcohol, Tobacco & Firearms*,
423 F.3d 777 (7th Cir. 2005) ......................................................................... 8

*Fid. Fed. Sav. & Loan Ass'n v. de la Cuesta*,
458 U.S. 141 (1982) ....................................................................................... 3

*Franklin National Bank of Franklin Square v. New York*,
347 U.S. 373 (1954) ....................................................................................... 5

*Geier v. Am. Honda Motor Co.*,
529 U.S. 861 (2000) ....................................................................................... 6

*Landgraf v. USI Film Prods.*,
511 U.S. 244 (1994) ....................................................................................... 8

*Landis v. N. Am. Co.*,
299 U.S. 248 (1936) ....................................................................................... 7

*Miller v. French*,
530 U.S. 327 (2000) ....................................................................................... 8

*Nat'l Min. Ass'n v. Dep't of Interior*,
251 F.3d 1007 (D.C. Cir. 2001) ..................................................................... 9

*Nat'l Org. for Women, Inc. v. Scheidler*,
396 F.3d 807 (7th Cir. 2005) ......................................................................... 7

*NationsBank of N.C., N.A. v. Variable Annuity Life Ins. Co.*,
513 U.S. 251 (1995) ............................................................................... 2, 3, 7

*Richardson v. United States*,
379 F.3d 485 (7th Cir. 2004) ......................................................................... 8

*Rio Grande Silvery Minnow v. Bureau of Reclamation*,
  601 F.3d 1096 (10th Cir. 2010) ................................................................................. 8

*Rivers v. Roadway Exp., Inc.*,
  511 U.S. 298 (1994) ................................................................................................. 4

*Skidmore v. Swift & Co.*,
  323 U.S. 134 (1944) ................................................................................................. 6

*Thorpe v. Hous. Auth. of City of Durham*,
  393 U.S. 268 (1969) ................................................................................................. 8

*Wachovia Bank, N.A. v. Burke*,
  414 F.3d 305 (2d Cir. 2005) ..................................................................................... 3

*Wells Fargo Bank N.A. v. Boutris*,
  419 F.3d 949 (9th Cir. 2005) .................................................................................... 3

*Wells Fargo Bank of Tex., N.A. v. James*,
  321 F.3d 488 (5th Cir. 2003) .................................................................................... 7

 **Statutes**

5 U.S.C. § 554(e) ........................................................................................................... 2

12 U.S.C. § 24 (Seventh) ..........................................................................................5-7

12 U.S.C. § 93a ............................................................................................................. 2

12 U.S.C. § 371 ............................................................................................................. 5

12 U.S.C. § 1463 ........................................................................................................... 2

12 U.S.C. § 1464 ........................................................................................................... 5

2025 Ill. Leg. Serv. 104-4 ............................................................................................ 1

815 Ill. Comp. Stat. 151/150 ........................................................................................ 1

**Regulations**

12 C.F.R. § 7.4002 ................................................................................................ 3, 4, 7, 8

12 C.F.R. § 145.17 ................................................................................................... 3

National Bank Non-Interest Charges and Fees,
   91 Fed. Reg. 22989 (Apr. 29, 2026) ................................................................... 1, 2

Order Preempting the Illinois Interchange Fee Prohibition Act,
   91 Fed. Reg. 23150 (Apr. 29, 2026) ................................................................... 1, 4

**INTRODUCTION**

As the Office of the Comptroller of the Currency ("OCC") discussed in its principal amicus brief, the Illinois Interchange Fee Prohibition Act, 815 Ill. Comp. Stat. 151/150 ("IFPA"), is an unworkable state law that threatens to upend the nation's intricately-designed card payments system—one of the vital payment systems in the United States in which national banks and Federal savings associations play critical roles. OCC Br., Dkt. No. 31. Recognizing this, the OCC has taken action under its rulemaking authorities to clarify and codify "that national banks' power to charge non-interest charges and fees includes the power to assess, collect, impose, levy, receive, reserve, take, or otherwise obtain non-interest charges and fees, including interchange fees from credit and debit card operations" irrespective of the party that sets them. OCC, National Bank Non-Interest Charges and Fees, 91 Fed. Reg. 22989, 22994-95 (Apr. 29, 2026) (the "Interim Final Rule"). The OCC has also issued an interim final order preempting the IFPA in light of its Interim Final Rule. OCC, Order Preempting the Illinois Interchange Fee Prohibition Act, 91 Fed. Reg. 23150, 23151 (Apr. 29, 2026) (the "Interim Final Order"; collectively with the Interim Final Rule, the "interim actions"). These interim actions will take effect on June 30, 2026, the day before the IFPA is set to take effect on July 1, 2026. Interim Final Rule, 91 Fed. Reg. at 22989; Interim Final Order, 91 Fed. Reg. at 23150; IFPA, 2025 Ill. Leg. Serv. 104-4.

As an initial matter, if the Court believes that the powers granted by the National Bank Act and Home Owners' Loan Act ("HOLA") preempt the IFPA, the OCC's interim actions when they become effective on June 30th will merely confirm that the IFPA does not apply to national banks and Federal savings associations. If not, while neither the Interim Final Rule nor Interim Final Order are challenged in this matter—indeed, the OCC is not a party to this action—the OCC's interim actions significantly alter the matters presented in this appeal. Because the OCC Interim Final Rule further clarifies and codifies regulations setting forth national bank powers and the

Interim Final Order independently preempts the IFPA before it goes into effect, any opinion that existing regulations do not preempt the IFPA will in all practical respects be advisory. That is, the OCC's interim actions change the regulatory recognition of national bank powers and prevent the IFPA from going into effect against national banks and Federal savings associations, leaving any opinion by this Court as to whether existing regulations warrant the same result beside the point.

As a result, the Court should either (1) find the IFPA's interchange fee prohibition and data use limitation[1] preempted under the National Bank Act and HOLA as to national banks and Federal savings associations, respectively, for the reasons set forth in the OCC's principal amicus brief, or if not (2) abstain from ruling on whether the OCC's existing regulations preempt the IFPA, recognizing that the OCC's interim actions change the regulatory landscape in this space[2] and independently preempt the IFPA.

**OCC'S INTERESTS AND AUTHORITIES**

As set forth in the OCC's principal amicus brief, the OCC is an independent bureau of the Department of the Treasury charged with supervision of national banks and Federal savings associations. OCC Br. at 2-3, Dkt. No. 31. The OCC is charged with "primary responsibility for surveillance of 'the business of banking.'" *NationsBank of N.C., N.A. v. Variable Annuity Life Ins. Co.*, 513 U.S. 251, 256 (1995). The OCC has broad authority from Congress to prescribe rules and regulations to carry out its responsibilities and to issue declaratory orders. 12 U.S.C. §§ 93a, 1463(a)(2); 5 U.S.C. § 554(e). This includes authority to define "incidental powers" of national

---

[1]   Unless otherwise stated, terms used herein are intended to have the same meaning as those used in the OCC's principal amicus brief.

[2]   The OCC's Interim Final Rule further clarifies and codifies national bank powers to charge non-interest fees—i.e., it addresses powers implicated by the IFPA's interchange fee prohibition. Interim Final Rule, 91 Fed. Reg. at 22990-91.  It does not address powers implicated by the IFPA's data use limitation.  That said, the OCC's Interim Final Order preempts both elements of the IFPA.

banks and to authorize activities beyond those enumerated by statute. *NationsBank*, 513 U.S.

at 258 n.2. OCC regulations "have no less pre-emptive effect than" the National Bank Act itself.

*See Fid. Fed. Sav. & Loan Ass'n v. de la Cuesta*, 458 U.S. 141, 153 (1982). Indeed, the OCC's

"regulatory authority, which carries the same weight as federal statutes, includes interpretation of

state law preemption under the" National Bank Act. *Aguayo v. U.S. Bank*, 653 F.3d 912, 919 (9th

Cir. 2011); *see also Wells Fargo Bank N.A. v. Boutris*, 419 F.3d 949, 962 (9th Cir. 2005) ("once

the OCC's authority" to rule-make "is established, its authority to displace contrary state regulation

where the Bank Act itself preempts contrary state regulation of national banks follows"); *Wachovia*

*Bank, N.A. v. Burke*, 414 F.3d 305, 314 (2d Cir. 2005) ("Federal courts have recognized that the

OCC may issue regulations with preemptive effect.").

**BACKGROUND**

I.      **Interim Final Rule**

The Interim Final Rule revises 12 C.F.R. § 7.4002 to clarify that "national banks' power to

charge non-interest charges and fees includes the power to assess, collect, impose, levy, receive,

reserve, take, or otherwise obtain non-interest charges and fees, including interchange fees from

credit and debit card operations." Interim Final Rule, 91 Fed. Reg. at 22994-95.[3] The Interim Final

Rule further explains that "national banks may charge non-interest charges or fees, even when such

charges and fees are set by or in consultation with third parties." *Id.* at 22995. As the OCC

explained, it issued the Interim Final Rule to address the ambiguity created by the district court's

"misunderstanding of the [National Bank Act] and § 7.4002." *Id.* at 22992. The OCC also

---

[3]     In the Interim Final Rule, the OCC noted that 12 C.F.R. § 145.17 provides Federal savings
associations with comparable authority. Interim Final Rule, 91 Fed. Reg. at 22990 n.4.

concluded that issuance of the Interim Final Rule would provide "certainty that the IFPA is preempted with respect to national banks before it goes into effect." *Id.* at 22992.

## II.   <u>Interim Final Order</u>

The Interim Final Order concludes that the National Bank Act and HOLA "and the regulations promulgated thereunder preempt the IFPA's interchange fee prohibition and, separately, the IFPA's data use limitation, with respect to national banks and Federal savings associations." Interim Final Order, 91 Fed. Reg. at 23154. It also states, "[a]s revised, 12 C.F.R. § 7.4002 should remove any doubt that Federal law both authorizes national banks to charge interchange fees and vests them with wide flexibility to charge such fees in accordance with sound business judgment and safe and sound banking principles." *Id.* at 23152. It further states that the flexibility afforded by section 7.4002 "supports a national bank's efficient and effective exercise of its deposit-taking, lending, and payment processing powers, as well as its corollary authority to be compensated." *Id.* at 23152-53.

## ARGUMENT

### I.   The Court Should Conclude that the IFPA Is Preempted by the National Bank Act and HOLA with Respect to National Banks and Federal Savings Associations.

The OCC's interim actions do not prevent this Court from ruling that the IFPA prevents or significantly interferes with national bank and Federal savings association powers granted by federal statutes and is, thus, preempted. Indeed, this Court should conclude that the IFPA is preempted from a statutory standpoint by the National Bank Act with respect to national banks and by HOLA with respect to Federal savings associations. *Rivers v. Roadway Exp., Inc.*, 511 U.S. 298, 312-13 & n.12 (1994) (explaining that when a court "construes a statute, it is explaining its understanding of what the statute has meant continuously since the date when it became law"). As explained more fully in the OCC's principal amicus brief, the interchange fee prohibition prevents

or significantly interferes with national banks' and Federal savings associations' statutorily authorized powers to "loan[] money on personal security" and to "receiv[e] deposits." 12 U.S.C. §§ 24 (Seventh), 1464(b) & (c); *see* OCC Br. at 5-6, 11, 13 n.4, Dkt. No. 31.

The OCC's analysis tracks closely the Second Circuit's opinion from just yesterday, which ruled on remand from the Supreme Court that the National Bank Act preempted a New York law that required national banks to pay interest on mortgage escrow accounts. *Cantero v. Bank of Am., N.A.*, No. 21-0400, 2026 WL 1217467, at *9 (2d Cir. May 5, 2026). In so doing, the court identified a power granted to national banks by the National Bank Act—namely, the power to make loans secured by interests on real estate under 12 U.S.C. § 371(a) and "incidental powers" thereto under 12 U.S.C. § 24 (Seventh). *Id.* at *6. It next assessed the nature of the New York law's interference with that statutory power as influenced by the OCC's regulatory statements, finding it confined a "broad grant[ ] of federal power" to banks. *Id.* at *7. The court last assessed the degree of interference, finding that requiring interest on escrow accounts was at least as severe as the advertising proscriptions preempted in *Franklin National Bank of Franklin Square v. New York*, 347 U.S. 373 (1954). 2026 WL 1217467, at *8. Ultimately, the Second Circuit concluded that the powers granted by the National Bank Act preempted the New York law.

Here, the district court correctly noted that the National Bank Act empowers national banks to loan money on personal security, receive deposits, and engage in incidental powers thereto to carry on the business of banking. RSA.19-20. But after identifying the powers conferred by statute, the district court failed to fully consider the nature and degree of the IFPA's interference with those powers. In the modern economy, credit and debit cards are an essential means for national banks and Federal savings associations to exercise their lending and deposit-taking powers. National banks and Federal savings associations necessarily have the authority to be compensated for their

provision of banking services, including as part of the "business of banking," a power enumerated in the National Bank Act. *See* 12 U.S.C. § 24 (Seventh). While the OCC's interim actions further elucidate these powers and conclude that the IFPA prevents or significantly interferes with them,[4] the Court nevertheless should conclude that the national bank powers in the National Bank Act and Federal savings association powers in HOLA statutorily preempt the IFPA. Indeed, if requiring interest on escrow accounts significantly interferes with a national bank's statutory power to make mortgage loans as the Second Circuit has now held, prohibiting the assessment of fees on certain portions of loans on personal guarantee (i.e., credit card transactions) plainly does as well.

## II. The Court Should Abstain from Deciding Whether Existing Regulations Preempt the IFPA in Light of the OCC's Interim Actions.

While the OCC believes that its existing regulations also recognize national bank and Federal savings association powers that preempt the IFPA, *see* OCC Br. at 4, 11-14, Dkt. No. 31, the Interim Final Rule further clarifies and codifies those powers, putting the issue beyond dispute. Moreover, the Interim Final Order finds the IFPA prevents or significantly interferes with the powers explicated in the Interim Final Rule, independently serving to preempt the IFPA before it goes into effect. Consequently, any ruling by this Court on whether current OCC regulations preempt the IFPA will be ineffectual. Unless disturbed by the OCC or by a court presented with a challenge to the interim actions (none is presented here), the OCC's interim actions will render advisory in all practical respects any opinion as to the preemptive effect of the OCC's existing

---

[4] Notably, the OCC's interpretation that the IFPA prevents or significantly interferes with national bank and Federal savings association power—as expressed in its amicus filings in this litigation and its Interim Final Order—is entitled to "weight" by this Court. *See Skidmore v. Swift & Co.*, 323 U.S. 134, 140 (1944); *see also Geier v. Am. Honda Motor Co.*, 529 U.S. 861, 883 (2000) (noting that agencies are "uniquely qualified" to comprehend the likely impact of state requirements when their delegated authority concerns subject matters that are "technical" and "the relevant history and background are complex and extensive").

regulations. Accordingly, if the Court believes the IFPA is not preempted by the National Bank Act and HOLA themselves, it should abstain from ruling on the preemptive effect of regulations that will change before the IFPA's effective date.

It bears repeating that the OCC's interim actions have the force and effect of law. *Supra* at 2-3. Courts have long recognized that the National Bank Act delegates to the OCC the authority to recognize incidental powers of national banks. *See, e.g.*, *NationsBank*, 513 U.S. at 256 ("As the administrator charged with supervision of the National Bank Act, the Comptroller bears primary responsibility for surveillance of 'the business of banking' authorized by § 24 Seventh." (citations omitted)). This delegation includes the authority to empower national banks to charge non-interest fees for their services. *See, e.g.*, *Wells Fargo Bank of Tex., N.A. v. James*, 321 F.3d 488, 493 (5th Cir. 2003) ("we think it plain that the OCC has been delegated the authority to determine, with a considerable discretionary b[e]rth, whether and which fees the national banks may assess"). Accordingly, even were it at issue in this action, the OCC's authority to promulgate its interim actions is beyond dispute.

Because the interim actions take effect on June 30th and will independently preempt the IFPA, this Court should refrain in the interest of prudence and judicial economy from reaching the issue of whether the IFPA prevents or significantly interferes with an exercise of power under section 7.4002 in its current form. *See generally Landis v. N. Am. Co.*, 299 U.S. 248, 254-55 (1936) (recognizing the "power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants" (citations omitted)); *Nat'l Org. for Women, Inc. v. Scheidler*, 396 F.3d 807, 811-12 (7th Cir. 2005) ("judicial economy and restraint" warranted not "decid[ing] a question that may not even be pertinent" later). That is, a decision regarding section 7.4002 in its current form, and prior to its amendment by the

Interim Final Rule, will be superseded before it has any operational effect on the enforceability of the IFPA as the IFPA does not take effect until July 1st. *Cf. Miller v. French*, 530 U.S. 327, 347 (2000) (when the "law underlying a judgment awarding . . . relief" changes, "relief is no longer enforceable to the extent it is inconsistent with the new law"); *City of Chicago v. Bureau of Alcohol, Tobacco & Firearms*, 423 F.3d 777, 783 (7th Cir. 2005) (when new law "affects the propriety of . . . prospective relief," there is "no vested right in the decree entered by the trial court [below]" (citing *Landgraf v. USI Film Prods.*, 511 U.S. 244, 273-74 (1994)). A decision would lack practical utility particularly were it to affirm the reasoning of the district court concerning section 7.4002 or were it to otherwise conflict with the OCC's interpretation of federal powers enunciated in the Interim Final Rule. *See generally Thorpe v. Hous. Auth. of City of Durham*, 393 U.S. 268, 281-82 (1969) (intervening change in law in the form of a federal regulation was controlling law for application by appellate court; "This same reasoning has been applied where the change was constitutional, statutory, or judicial." (citations omitted)); *Richardson v. United States*, 379 F.3d 485, 487 (7th Cir. 2004) ("It is well-established that a court generally applies the law in effect at the time of its decision, and that if the law changes while the case is on appeal the appellate court applies the new rule.").

In sum, as set forth in the OCC's principal amicus brief, this Court should conclude that the IFPA is preempted by the National Bank Act and HOLA. If it disagrees, it should abstain from considering whether the OCC's existing regulations preempt the IFPA as its interim actions will preempt the IFPA as a matter of law before that state statute goes into effect. *Cf. Rio Grande Silvery Minnow v. Bureau of Reclamation*, 601 F.3d 1096, 1114 (10th Cir. 2010) (finding challenge moot; "The old set of rules, which are the subject of this lawsuit, cannot be evaluated as if nothing has

changed. A new system is now in place." (quoting *Nat'l Min. Ass'n v. Dep't of Interior*, 251 F.3d 1007, 1011 (D.C. Cir. 2001)).

## CONCLUSION

For the foregoing reasons, the Court should either (1) find the IFPA's interchange fee prohibition and data use limitation preempted under the National Bank Act and HOLA as to national banks and Federal savings associations, respectively, or if not, (2) abstain from ruling on whether the OCC's existing regulations preempt the IFPA, recognizing that the OCC's interim actions change the regulatory landscape in this space and independently preempt the IFPA.

Dated: May 6, 2026

Respectfully Submitted,

WILL C. GILES, Principal Deputy Chief Counsel
BRIAN P. HUDAK, Deputy Chief Counsel

*/s/ Peter C. Koch*
PETER C. KOCH, Director for Litigation
AMBER N. MELTON, Asst. Director for Litigation
ASHLEY W. WALKER, Special Counsel
HANNAH HICKS, Counsel
KRISTIN M. MCMANUS, Attorney
400 Seventh Street, SW
Washington, DC 20219
(202) 649-6300

*Counsel for Amicus Curiae the Office of the Comptroller of the Currency*