# Exhibit A

# In the United States Court of Appeals for the Seventh Circuit

ILLINOIS BANKERS ASSOCIATION, AMERICAN BANKERS ASSOCIATION, AMERICA'S CREDIT UNIONS & ILLINOIS CREDIT UNION LEAGUE,

*Plaintiffs-Appellants-Cross-Appellees*,

*v.*

KWAME RAOUL, in his official capacity as Illinois Attorney General,

*Defendant-Appellee-Cross-Appellant.*

On Appeal from the United States District Court
for the Northern District of Illinois, No. 24-cv-7307

**[PROPOSED] SUPPLEMENTAL BRIEF OF AMICI CURIAE ILLINOIS RETAIL MERCHANTS ASSOCIATION, ILLINOIS FUEL AND RETAIL ASSOCIATION, NATIONAL ASSOCIATION OF CONVENIENCE STORES, NATIONAL RETAIL FEDERATION, AND FMI—THE FOOD INDUSTRY ASSOCIATION**

Rick Eberstadt
Jonathan E. DeWitt
LEHOTSKY KELLER COHN LLP
200 Massachusetts Avenue, NW,
Suite 700
Washington, DC 20001
(512) 693-8350

Mithun Mansinghani
LEHOTSKY KELLER COHN LLP
629 W. Main Street
Oklahoma City, OK 73102
(512) 693-8350
mithun@lkcfirm.com

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES...................................................................................... ii

INTRODUCTION ...................................................................................................1

ARGUMENT............................................................................................................2

    I.   The interim rule and order are invalid.....................................................2

    II.  Even if valid, the interim rule does not preempt the IFPA's
          regulation of interchange fees that are not competitively set,
          nor does it preempt the IFPA's regulation of card networks. ............8

Certificate of Service ...........................................................................................12

Certificate of Compliance ...................................................................................12

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Cantero v. Bank of America, N.A.,*
  602 U.S. 205 (2024) ...................................................................................6

*Conti v. Citizens Bank, N.A.,*
  157 F.4th 10 (1st Cir. 2025) ......................................................................6

*Cuomo v. Clearing House Ass'n, L.L.C.,*
  557 U.S. 519 (2009) ................................................................................3, 7

*La. Pub. Serv. Comm'n v. FCC,*
  476 U.S. 355 (1986) ...................................................................................2

*Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.,*
  463 U.S. 29 (1983) .....................................................................................4

*In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.,*
  827 F.3d 223 (2d Cir. 2016) ......................................................................9

*Perdue v. Crocker Nat'l Bank,*
  702 P.2d 503 (Cal. 1985) ...........................................................................7

**Statutes**

12 U.S.C. § 25b ...........................................................................................6, 11

815 Ill. Comp. Stat. § 151/150-5 ..................................................................10

**Other Authorities**

Consumer Fin. Prot. Bureau, *The Consumer Credit Card Market,*
  *Report to Congress* (2025),
  available at https://perma.cc/P3ET-SWRM .............................................8

H.R. Conf. Rep. No. 103-651 (1994),
  *reprinted in* 1994 U.S.C.C.A.N. 2068..............................................................................7

Nicholas Economides, *Competition Policy Issues in the Consumer
  Payments Industry in* R. Litan & M. Baily, *Moving Money: The
  Future of Consumer Payment, Brookings Institution* (2009)
  available at https://perma.cc/6B6E-22PQ .......................................................4

## INTRODUCTION

OCC's last-minute attempt to override a duly-enacted State law does not supersede this Court's authority to decide the preemption question. Rather, this Court must decide whether the IFPA is preempted by the National Bank Act without deference to OCC. The IFPA is not preempted, and OCC's latest maneuvers do not change that result.

To start, the interim final rule and order cannot affect this appeal because they are both invalid. As the Attorney General explains in his supplemental brief, both the rule and order are procedurally flawed. They are also substantively flawed because they rely on textbook arbitrary and capricious reasoning. For example, the rule and order rely on the banks' arguments asserted in this case but entirely fail to consider the contentions advanced by the Attorney General and his supporting amici. Moreover, OCC's rules and orders cannot expand a national bank's powers or the National Bank Act's preemption beyond what Congress enacted. So for all the reasons set forth in the State's and its amici's briefs, OCC's latest actions exceed its statutory authority and do not justify holding the IFPA is preempted.

Even assuming its validity, OCC's interim rule does *not* address a bank's power to receive interchange fees as they currently exist in Illinois: anticompetitive fees set by card networks in agreement with the banks. The lack of interbank competition is the core feature of the interchange fee system in the United States, and OCC's amended regulation retains the requirement that fees "be arrived at by each national bank on a competitive basis." Interim Rule 19. Accordingly, even as amended, OCC's regulation does not preempt the strictures the IFPA imposes on anticompetitive interchange fees. Nor does the interim order purport to preempt the IFPA as applied to the card networks, so even if the IFPA is now preempted as to national banks, its regulation of card networks must still stand.

## ARGUMENT

### I.   The interim rule and order are invalid.

Before holding that a regulation preempts a state law, the Court must resolve challenges to the regulation's validity, since "an agency literally has no power to act, let alone pre-empt the validly enacted legislation of a sovereign State, unless and until Congress confers power upon it." *La. Pub. Serv.*

*Comm'n v. FCC*, 476 U.S. 355, 374 (1986); *see also Cuomo v. Clearing House Ass'n, L.L.C.*, 557 U.S. 519 (2009) (refusing to hold certain state actions preempted by OCC regulation because the regulation exceeded OCC's authority and unreasonably interpreted the statute under *Chevron*). Here, OCC's interim final rule amending its fee-setting regulation is invalid, not only because of the procedural improprieties addressed by the Attorney General, but also because it is arbitrary and capricious and contrary to the National Bank Act.

To start, both the interim rule and order rely on arbitrary and capricious decisionmaking. OCC's determinations did not rely on any robust rulemaking record (because OCC unjustifiably skipped the administrative process). Instead, as the Attorney General points out, OCC relies on the banks' declarations in this case (which do not support preemption) and second-hand speculation. Appellee Suppl. Br. 5. Worse still, OCC wholly ignored contrary evidence and arguments presented in this case: that compliance is feasible as a routine update to network technical standards; that compliance burden falls primarily on merchants, processors, and card networks;

that variable interchange rates are already calculated across hundreds of jurisdictions globally; that interchange fees vastly exceed processing costs so banks can still profit handsomely from interchange under the IFPA; and that banks operate profitably under far more restrictive interchange regimes globally. *See* IRMA Br. 4, 14-22. Because OCC "entirely failed to consider an important aspect of the problem," its action is arbitrary and capricious. *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983).

Equally flawed is another central premise of OCC's interim rule and order: that banks have no practical alternative compensation for their credit and debit activities because bilateral fee negotiation between banks and merchants is supposedly unworkable. Interim Rule 5; Interim Order 10. OCC cites nothing for this proposition, and it defies economics and experience. *See, e.g.*, Nicholas Economides, *Competition Policy Issues in the Consumer Payments Industry* 122 *in* R. Litan & M. Baily, *Moving Money: The Future of Consumer Payment, Brookings Institution* (2009) available at https://perma.cc/6B6E-22PQ. The banks themselves claim "[n]ational-bank Issuers also can, and sometimes do, negotiate different interchange rates

with particular merchants or Acquirers." Appellants' Br. 49. Banks could set their own fees. If they did, those fees would not be covered by the IFPA.

The interim order and rule are also based on a flawed legal interpretation of the National Bank Act's preemption provision. In OCC's view, if a state law impacts a bank's ability to operate "efficiently," it is preempted. Interim Order 10-11. OCC points to the inefficiency of negotiated fees, but even if true, nothing in the IFPA *prohibits* banks from contracting with card networks. Rather, in the process of regulating the fee-setting business of card networks, the IFPA reduces the interchange fee amount a bank receives if the bank allows the card networks to set the fees (as opposed to competitively setting the fees itself). Nor is the IFPA preempted because it will reduce bank revenues such that (OCC speculates) they may cut back on "efficient" rewards programs (rather than on their own immense profits). *Id.* 11. As the First Circuit explained last year, this broad conception of efficiency-based preemption is exactly the sort of standard the Supreme Court rejected in *Cantero* because it would preempt virtually every state law. *Conti v.*

5

*Citizens Bank, N.A.*, 157 F.4th 10, 25-26 (1st Cir. 2025), *cert. denied*, No. 25-1004, 2026 WL 1052171 (U.S. Apr. 20, 2026).

Thus, OCC's concern about a "patchwork of State laws," Interim Order 14, is at war with *Cantero* and Dodd-Frank. *Cantero* rejected "a categorical test that would preempt virtually all state laws that regulate national banks, at least other than generally applicable state laws such as contract or property laws." *Cantero v. Bank of America, N.A.*, 602 U.S. 205, 220-21 (2024). The National Bank Act's preemption provision specifies the Act "does not occupy the field in any area of State law." 12 U.S.C. § 25b(b)(4). Dodd-Frank instead requires a "nuanced" analysis whereby only some state laws are preempted. *Cantero*, 602 U.S. at 219-20. Dodd-Frank also regulated debit card interchange fees in a manner that left states free to enact more stringent regulation. IRMA Br. 23-25. Thus Congress rejected OCC's categorical concern that absolute "uniformity" is necessary for the national bank system to function. Interim Order 14. Interchange already operates efficiently across hundreds of jurisdictions globally that impose differing regulations. IRMA Br. 20.

The interim order is thus another chapter in OCC's saga of unlawfully aggressive preemption determinations. In 1985, courts rejected OCC's attempt to preempt state laws affecting the deposit-taking activities of national banks as "palpably erroneous." *Perdue v. Crocker Nat'l Bank*, 702 P.2d 503, 521 (Cal. 1985), *appeal dismissed*, 475 U.S. 1001 (1986). Congress agreed, referring to OCC's position as "inappropriately aggressive, resulting in preemption of State law in situations where the federal interest did not warrant that result." H.R. Conf. Rep. No. 103-651, at 53 (1994), *reprinted in* 1994 U.S.C.C.A.N. 2068, 2074. Similarly, the Supreme Court in *Cuomo* rejected OCC's attempt by regulation to preempt state investigations into bank lending practices. 557 U.S. at 531-33. In Dodd-Frank, Congress again rejected OCC's broad view of preemption when it statutorily abrogated an OCC regulation that extended preemption to bank subsidiaries, affiliates, and agents. *See* IRMA Br. 27. OCC's last-ditch attempt to influence this Court's preemption determination is no less "inappropriately aggressive" than its prior preemption actions.

Finally, neither the interim rule nor the interim order grapple with the fact that interchange fees are set at a supracompetitive rate. IRMA Br. 3-4.

7

Nothing in the National Bank Act authorizes the receipt of anticompetitive fees set by horizontal agreement among competing banks via card networks. *Id.* 12. Receiving fees set by anticompetitive third-party agreements is not a question of efficiency—it is a windfall. Indeed, in addition to exorbitant interchange fees, banks also make hundreds of billions on credit card interest and cardholder fees. Consumer Fin. Prot. Bureau, *The Consumer Credit Card Market, Report to Congress* 5 (2025), available at https://perma.cc/P3ET-SWRM. Banks could exercise their lending and deposit powers perfectly well by negotiating fees competitively with merchants or by receiving reduced profits from network-set fees. The interim rule and order thus are invalid.

**II. Even if valid, the interim rule does not preempt the IFPA's regulation of interchange fees that are not competitively set, nor does it preempt the IFPA's regulation of card networks.**

Under the interim rule's amendments to Section 7.4002, "[b]usiness decisions regarding non-interest charges and fees permitted under this section should be arrived at by each national bank *on a competitive basis and not on the basis of any agreement*, arrangement, undertaking, understanding, or

discussion with other banks or their officers." Interim Rule 19 (emphasis added). But currently, interchange fees in the United States are *not* arrived on a competitive basis. *See* IRMA Br. 3. The banks agree to use Visa or Mastercard networks, and the banks' network rules require merchants to honor all cards from those respective brands, so banks need not compete to set lower fees and instead all accept the default network-set fees. *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 827 F.3d 223, 228 (2d Cir. 2016). Thus, even if the interim rule validly amended Section 7.4002, the IFPA's regulation of network-set interchange fees is not preempted because those interchange fees are not competitively set.

Neither the interim rule nor the interim order contends that interchange fees in the United States are arrived at on a competitive basis. Not even the banks claim as much in their Reply brief. *Compare* IRMA Br. 9-10, 12 *with* Banks' Reply 25-26. A card network is not some outside contractor that provides an individual bank with technical assistance in determining interchange fees as part of its competition with other banks. *Contra* Interim Rule 7-8. They are a means by which the banks avoid competing on those

fees. Perhaps if the interchange fees were competitively set, OCC might have a basis for its effort to include them among the non-interest fees that banks are empowered to charge. But because they are not, the interim order's conclusion that the IFPA is preempted by the interim rule is legally wrong.

Similarly, OCC's recent actions do nothing to disturb the district court's consistent conclusions that the IFPA is not preempted as to the card networks. The IFPA regulates only those interchange fees established by card networks. 815 Ill. Comp. Stat. § 151/150-5. National banks are free to set their own fees for Illinois transactions and avoid application of the IFPA entirely; only those that use fees established by the card networks are subject to the IFPA. It is significant that neither the interim rule nor the interim order purport to empower the card networks to establish interchange fees nor preempt the IFPA's regulation of card networks' acts in doing so. Interim Order 5 (arguing the IFPA is preempted "[a]s applied to national banks and Federal savings associations").

Nor could OCC have acted to extend preemption to the card networks. The National Bank Act repeatedly refuses to disturb "the applicability of

State law to any subsidiary, affiliate, or agent of a national bank." 12 U.S.C. § 25b(b)(2), (e), (h)(2). If state law cannot be preempted as applied to a national bank's own subsidiary—an entity directly owned and controlled by the bank—it cannot possibly be preempted as applied to a card networks, which the banks characterize as a mere contractual counterparty. IRMA Br. 25-28.

May 6, 2026

Rick Eberstadt
Jonathan E. DeWitt
LEHOTSKY KELLER COHN LLP
200 Massachusetts Avenue, NW,
Suite 700
Washington, DC 20001
(512) 693-8350

Respectfully submitted,

/s/ *Mithun Mansinghani*
Mithun Mansinghani
LEHOTSKY KELLER COHN LLP
629 W. Main Street
Oklahoma City, OK 73102
(512) 693-8350
mithun@lkcfirm.com

*Counsel for Amici Curiae*

## CERTIFICATE OF SERVICE

On May 6, 2026, this brief was served via CM/ECF on all registered counsel and transmitted to the Clerk of the Court.

/s/ *Mithun Mansinghani*
Mithun Mansinghani

## CERTIFICATE OF COMPLIANCE

This brief complies with: (1) the type-volume limitation proposed in amici's motion for leave to file this brief because, excluding the parts of the brief exempted by Rule 32(f), it contains 1950 words; and (2) the typeface requirements of Rule 32(a)(5) because it has been prepared in a proportionally spaced typeface (14-point Palatino Linotype) using Microsoft Word (the same program used to calculate the word count).

/s/ *Mithun Mansinghani*
Mithun Mansinghani